UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     Plaintiff,

             v.

LEGACY BUILDERS/DEVELOPERS CORP.,

     Defendant.

24 Civ. 6367

**<u>CONSENT DECREE</u>**

## TABLE OF CONTENTS

I.      JURISDICTION AND VENUE...................................................................................4

II.     ADMISSIONS.........................................................................................................4

III.    APPLICABILITY....................................................................................................5

IV.     DEFINITIONS........................................................................................................6

V.      CIVIL PENALTY....................................................................................................7

VI.     INJUNCTIVE RELIEF............................................................................................9

VII.    REPORTING REQUIREMENTS...........................................................................16

VIII.   STIPULATED PENALTIES..................................................................................18

IX.     FORCE MAJEURE...............................................................................................20

X.      DISPUTE RESOLUTION.....................................................................................22

XI.     INFORMATION COLLECTION AND RETENTION............................................24

XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS..................................26

XIII.   COSTS.................................................................................................................28

XIV.    NOTICES.............................................................................................................28

XV.     EFFECTIVE DATE...............................................................................................29

XVI.    RETENTION OF JURISDICTION.........................................................................29

XVII.   MODIFICATION..................................................................................................30

XVIII.  TERMINATION....................................................................................................30

XIX.    PUBLIC PARTICIPATION....................................................................................31

XX.     SIGNATORIES/SERVICE.....................................................................................31

XXI.    INTEGRATION....................................................................................................32

XXII.   26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION ....................................32

XXIII.  FINAL JUDGMENT.............................................................................................33

XXIV.   EXHIBITS............................................................................................................37

1.    WHEREAS, plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint concurrently with this Consent Decree, alleging that defendant Legacy Builders/Developers Corp. ("Legacy" or "Defendant," and together with the United States, the "Parties"), violated Section 409 of the Toxic Substances Control Act (the "Act"), 15 U.S.C. § 2689, and the Renovation, Repair, and Painting Rule (the "RRP Rule"), 40 C.F.R. part 745, subpart E;

2.    WHEREAS, the complaint alleges that, during renovation work at more than one hundred residential apartments in New York City, Defendant violated the RRP Rule's certification and training requirements, lead-safe work practice requirements, warning and notice requirements, and recordkeeping requirements;

3.    WHEREAS, John Bennardo ("Bennardo"), the Chief Executive Officer of Legacy, agrees to enter into this Consent Decree in his personal capacity to provide the relief specified herein;

4.    WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest; and

5.    WHEREAS, the United States has determined that Legacy has documented an inability to pay the full civil penalty for which it otherwise would be liable for the violations alleged in the Complaint, and therefore, solely because of that documented inability to pay, the United States is prepared to settle for a lower amount reflective of its ability to pay;

6.    NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 17 of the Act, 15 U.S.C. § 2616, and over the Parties.  Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because Legacy is incorporated and has its principal place of business in this District, and because the complaint alleges that Legacy violated TSCA and the RRP Rule within this District.

8.     For purposes of this Decree, or any action to enforce this Decree, Legacy and Bennardo (the "Legacy Parties") consent to the Court's jurisdiction over this Decree and any such action and over the Legacy Parties and consent to venue in this judicial district.

9.     For purposes of this Consent Decree, the Legacy Parties agree that the Complaint states claims upon which relief may be granted pursuant to Section 409 of the Act.

## II.    ADMISSIONS

10.     Defendant admits, acknowledges, and accepts responsibility for the following:

a.     Between 2016 and 2020, Legacy performed renovation work at more than one hundred residential apartments at the following addresses in Manhattan: 160 E. 48th Street; 200 E. 62nd Street; 241 Central Park West; 515 E. 89th Street; and 45 White Street.

b.     Legacy failed to comply with requirements of EPA's Renovation Repair and Painting Rule ("RRP Rule") on numerous occasions at these renovation projects. Among other things:

(1)     Legacy failed to provide on-the-job lead safety training to workers, in violation of the RRP rule.

(2)     Legacy failed to adequately contain construction dust, including dust containing lead in excess of levels permitted under the RRP Rule, and to conduct the required post-renovation cleaning verification, in violation of the RRP rule.

(3)     Legacy failed to post signs clearly defining its work area and warning occupants and other persons not involved in renovation activities to remain outside of the work area, in violation of the RRP Rule.

(4)    Legacy failed to provide a lead-hazard information pamphlet to the owner or occupants of the building before commencing work, in violation of the RRP Rule.

(5)    Legacy failed to maintain documentation showing that it complied with lead-safe work practices, in violation of the RRP Rule.

c.    Additionally, between June 2016 and August 2017, Legacy performed renovation work covered by the RRP Rule at two of these worksites without possessing the firm certification required by the RRP Rule for renovation firms performing such work and without assigning a certified renovator to oversee those projects.

### III.    APPLICABILITY

11.    The obligations of this Consent Decree apply to and are binding upon the United States, and upon the Legacy Parties and any successors, assigns, or other entities or persons otherwise bound by law.

12.    No transfer of ownership or operation of Defendant, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the Legacy Parties of their obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer, the Legacy Parties shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and the United States Attorney for the Southern District of New York, in accordance with Section XIV (Notices).  Any attempt to transfer ownership or operation of Defendant without complying with this Paragraph constitutes a violation of this Decree.

13.    The Legacy Parties shall provide a copy of this Consent Decree to all officers, employees, agents, and entities whose duties might reasonably include compliance with any provision of this Decree.  In addition, the Legacy Parties shall provide a copy of Exhibit A to any contractor or subcontractor retained to perform work required under this Consent Decree.  The

Legacy Parties shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

14.     In any action to enforce this Consent Decree, the Legacy Parties shall not raise as a defense the failure by any of their officers, directors, employees, agents, contractors, or subcontractors to take any actions necessary to comply with the provisions of this Consent Decree.

## IV.    DEFINITIONS

15.     Terms used in this Consent Decree that are defined in the Act or in the RRP Rule have the meanings assigned to them in the Act or the RRP Rule, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

    a.  "Additional Legacy Renovation Firm" means any Firm other than Legacy that is more than 50% owned, or otherwise controlled, by a Legacy Party.

    b.  "Legacy" or "Defendant" means defendant Legacy Builders/Developers Corp.

    c.  "Legacy Parties" means Legacy and Bennardo.

    d.  "Bennardo" means John Bennardo, the Chief Executive Officer of Legacy.

    e.  "Certified Contractor" means a contractor who has been certified as a firm in accordance with 40 C.F.R § 745.89 and whose certification is in effect throughout his/her involvement with a Renovation.

    f.  "Certified Firm" means a Firm that has been certified in accordance with 40 C.F.R § 745.89 and for which the certification is in effect throughout the time of its involvement with a Renovation.

    g.  "Certified Renovator" means a Renovator who has been certified in accordance with 40 C.F.R. § 745.90(a).

    h.  "Certified Subcontractor" means a Subcontractor that has been certified as a firm in accordance with 40 C.F.R § 745.89 and whose certification is current throughout his/her involvement with a Renovation.

    i.  "Child-Occupied Facility" has the same meaning as set forth in 40 C.F.R. § 745.83.

    j.  "Complaint" means the complaint filed by the United States in this action.

k. "Consent Decree" or "Decree" means this Decree and all appendices attached hereto.

l. "Contractor" or "Subcontractor" means a Firm that performs any portion of work that constitutes Renovation as a contractor or subcontractor of Legacy or an Additional Legacy Renovation Firm.

m. "Covered Work Site" shall mean Target Housing or a Child-Occupied Facility.

n. "Date of Lodging" shall mean the date this Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of New York.

o. "Day" means a calendar day unless expressly stated to be a business day. In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day.

p. "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

q. "Effective Date" means the definition provided in Section XV.

r. "Firm" has the same meaning as set forth in 40 C.F.R. § 745.83.

s. "Interest" means interest pursuant to 28 U.S.C. § 1961.

t. "Paragraph" means a portion of this Decree identified by an Arabic numeral.

u. "Parties" means the United States and Defendant.

v. "Renovator" has the same meaning as set forth in 40 C.F.R. § 745.83.

w. "Renovation" has the same meaning as set forth in 40 C.F.R. § 745.83.

x. "Section" shall mean a portion of this Decree identified by a roman numeral.

y. "Target Housing" has the same meaning as set forth in 40 C.F.R. § 745.103.

z. "United States" shall mean the United States of America, acting on behalf of EPA.

## V.    CIVIL PENALTY

16.    Defendant shall pay the sum of $168,000.00 as a civil penalty, plus interest as described in this Paragraph. This civil penalty shall be made in four payments of $42,000, with the first payment due 60 days after the Effective Date and subsequent payments due thereafter on

the anniversary of the Effective Date. Defendant shall include with the first payment an additional amount for interest accrued at the rate of 8.5% per year on the total penalty amount from the Date of Lodging through the date of payment. Defendant shall include with each subsequent payment an additional amount for interest accrued at the rate of 8.5% per year on the unpaid balance from the date of the previous payment through the date of the payment. After the Effective Date, the U.S. Attorney's Office for the Southern District of New York will provide to Defendant a calculation of the interest due for each payment.

17.    Defendant shall pay the civil penalty by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Defendant by the United States Attorney's Office for the Southern District of New York after the Effective Date. The payment instructions provided by the United States Attorney's Office will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree.

18.    At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to EPA in accordance with Section XIV; and (iii) to the United States via email or regular mail in accordance with Section XIV. Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States of America v. Legacy Builders/Developers Corp.* and shall reference the civil action number and CDCS Number and DOJ case number 90-5-1-1-12249.

19.    Defendant may make any payment prior to its due date, but must contact the U.S. Attorney's Office in advance for a determination regarding the amount of interest to be included

with the payment. If any installment payment includes an overpayment, the amount of the overpayment will be applied to the remaining principal.

20.     If Defendant fails to make any payment required under Paragraph 16 by the due date, the Government may send Defendant a notice of late payment.  If Defendant fails to make the payment and to pay all interest and stipulated penalties owed within 30 days of receipt of the notice, all remaining payments and all accrued interest will be due immediately. Interest will continue to accrue on any unpaid amounts until Defendant pays the total amount due. Interest required under this Paragraph is in addition to any stipulated penalties owed under Section VIII.

21.     If Defendant becomes the subject of a proceeding under the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all remaining payments and accrued interest will be due immediately. Interest will continue to accrue on any unpaid amounts until Defendant pays the total amount due. Interest required under this Paragraph is in addition to any stipulated penalties owed under Section VIII.

22.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal income tax.

23.     Defendant acknowledges that the amount of the civil penalty has been set based on its documented inability to pay a greater amount and that, in the absence of a limited ability to pay, under the relevant EPA penalty policy, Defendant's civil penalty would have been significantly higher than the agreed-upon amount.

## VI.    INJUNCTIVE RELIEF

24.     <u>RRP Rule Compliance</u>: Defendant shall comply, and the Legacy Parties shall ensure that all Additional Legacy Renovation Firms comply, with the RRP Rule during Renovations at a Covered Work Site, including, but not limited to, by:

    a.     Having firm certification pursuant to 40 C.F.R. §§ 745.81(a)(2)(ii) and 745.89(a)(1);

b. Assigning a Certified Renovator pursuant to 40 C.F.R. §§ 745.81(a)(3) and 745.89(d)(2) to all Renovations at a Covered Work Site, and either having Certified Renovators perform all Renovation activities at a Covered Work Site, or having other individuals performing Renovation activities at a Covered Work Site trained by a Certified Renovator as provided in 40 C.F.R. §§ 745.81(a)(3) and 745.89(d)(1);

c. Providing the lead hazard information pamphlet ("The Lead-Safe Certified Guide to Renovate Right") to the building owner, the owner and/or occupant of the unit being renovated and/or each affected unit, pursuant to 40 C.F.R. § 745.84(a), (b), and (c); obtaining a written acknowledgment of receipt of the pamphlet or obtaining a certificate of mailing at least 7 days prior to the Renovation; and maintaining relevant records for three (3) years after the termination of the Consent Decree;

d. Posting warning signs pursuant to 40 C.F.R. § 745.85(a)(1);

e. Containing the work area pursuant to 40 C.F.R. § 745.85(a)(2);

f. Containing waste from Renovation pursuant to 40 C.F.R. § 745.85(a)(4);

g. Performing post-Renovation clean up pursuant to 40 C.F.R. § 745.85(a)(5); and

h. Maintaining and producing records pursuant to 40 C.F.R. §§ 745.86(a) and (b).

25. <u>Renovation Checklist</u>: Defendant shall use, and the Legacy Parties shall ensure that all Additional Legacy Renovation Firms use, the Renovation Checklist attached to this Consent Decree as Exhibit B when performing Renovations of a Covered Work Site.

26. <u>Personal Protective Equipment</u>: Offer at Legacy's expense personal protective equipment to current employees or contractors, including disposable coveralls, disposable non-latex gloves, disposable foot covers, eye protection, N-100 respirators, disposable waste bags, and duct tape.

27. <u>Notification of Work</u>: Defendant shall notify, and the Legacy Parties shall ensure that all Additional Legacy Renovation Firms notify, EPA in writing in accordance with Section XIV:

a.    Of each upcoming Renovation performed for compensation at a Covered Work Site by such entity at least 14 days before beginning the Renovation. The notification to EPA of a Renovation shall include, at a minimum: (a) the location of the Covered Work Site (the address) and the areas to be renovated (e.g., apartment number(s), common area(s), exterior); (b) the character of the Covered Work Site (e.g., single family domicile, multi-family apartment building, school building); (c) whether the Covered Work Site will be occupied at the time of the Renovation; (d) whether children reside at or frequent the Covered Work Site when not under Renovation; (e) the scope of work to be performed; (f) the full name, address, telephone number of each contractor and/or subcontractor working on the Renovation, (g) the full name, address and telephone number of the individual who will be the on-site Certified Renovator for the work and a copy of his/her Renovator certificate, (h) the name, address, and telephone number of the Covered Work Site's owner or agent; (i) the scheduled dates of work; and (j) any test results supporting an exemption pursuant to 40 C.F.R. § 745.86(b)(1). Additionally, the notification will state that Legacy or the Additional Legacy Renovation Firm authorizes EPA to inspect at the Covered Work Site while the Renovation is occurring and will take all reasonable steps to secure access for EPA from the Covered Work Site's owner(s). If a Renovation-related change/modification (e.g., change of Certified Renovator, scope of work, dates of work) becomes necessary, Legacy or the Additional Legacy Renovation Firm must either update their original notification to EPA for that Covered Work Site or send EPA a new notification promptly.

b.    Of complaints they receive verbally or in writing from tenants, neighbors, the public, tenant organizations, and workers regarding work regulated by the RRP Rule within seven (7) Days after receiving such complaints.

c.    Of any official correspondence received from New York City agencies regarding the condition, handling, maintenance, disturbance, containment, or abatement of lead-based paint at the Covered Work Site within seven (7) Days after receiving such correspondence.

28.    <u>Compliance Officer</u>: Legacy shall designate, and the Legacy Parties shall ensure that each Additional Legacy Renovation Firm designates, a compliance officer (individually certified as a Renovator) as a point of contact to deal with lead safe work practice issues, monitor contractors' and subcontractors' compliance with RRP Rule requirements for that Firm, and respond to EPA with regard to any other issues that may arise with regard to the performance of a Renovation (the "Compliance Officer"). Legacy shall designate and identify the Compliance

Officer to EPA no later than 30 days after the Effective Date. Legacy and/or Additional Legacy Renovation Firms may share a Compliance Officer.  No Renovation work shall be performed at any Covered Work Site unless a Compliance Officer has been designated and is available to EPA at any time Renovation work is taking place.

29.    <u>Contractors and Subcontractors</u>: Legacy shall hire, and the Legacy Parties shall ensure that Additional Legacy Renovation Firms hire, only certified firms as contractors and subcontractors for Renovations at a Covered Work Site; memorialize contractor and subcontractor hiring in written contracts, copies of which shall be available to EPA upon request; and when utilizing contractors and subcontractors, for Renovations at a Covered Work Site:

a.    Require the contractors or subcontractors to use the Renovation Checklist. Regardless of the provisions of any contract between the Legacy and/or the Additional Legacy Renovation Firm and their contractors or subcontractors, Legacy and/or the Additional Legacy Renovation Firm is responsible for the completion of the Renovation Checklist by its contractors or subcontractors for each Renovation of a Covered Work Site.

b.    Suspend any contractor or subcontractor with an expired RRP firm certification as soon as possible but not later than twenty-four (24) hours after learning of the expired certification. Legacy and/or the Additional Legacy Renovation Firm shall notify EPA in writing within seven (7) Days after each suspension.

c.    Suspend any contractor or subcontractor found to be in violation of the RRP Rule and cause their work to cease as soon as is feasible, but in no event more than twenty-four (24) hours after receiving credible notice of the violations.

d.    Require contractors and subcontractors to certify in writing, prior to receiving payments beyond an initial deposit, that they have complied with the RRP requirements for the work they have performed or continue to perform and to submit records demonstrating compliance at the completion of the work. The designated Compliance Officer shall review these records to confirm that they demonstrate compliance prior to Legacy and/or the Additional Legacy Renovation Firm making final payment. Legacy and/or the Additional Legacy Renovation Firms shall maintain and make available to EPA any such records for three (3) years after the termination of the Consent Decree.

Nothing in this Paragraph relieves Legacy, the Legacy Parties, or any Additional Legacy Renovation Firm of any legal responsibility it may have under applicable law for RRP violations during any Renovation of a Covered Work Site performed by any contractor or subcontractor.

30.     <u>Mitigation</u>: Within one year of the Effective Date, Legacy shall arrange for the following mitigation measures: resident education, worker training sessions, and landlord/property manager information distribution as mitigation of potential lead-based paint exposures at the Renovations at 160 E. 48th Street; 200 E. 62nd Street; 241 Central Park West; 515 E. 89th Street; and 45 White Street:

   a.   <u>Resident Education on Lead-Based Paint Hazards</u>:  Legacy shall host, for the residents of 160 E. 48th Street; 200 E. 62nd Street; 241 Central Park West; 515 E. 89th Street; and 45 White Street, resident education sessions free of charge, including a question-and-answer component, on the hazards of lead-based paint and methods of minimizing potential exposures.  For each resident education session, Legacy shall:

   (1)   If the owner of each property consents, hold the resident education session at the relevant properties, and, if not, hold the resident education session at a location convenient to the residents and provide notice to each resident by mail.

   (2)   Ensure that the resident education session is led by a qualified trainer who is a certified renovator pursuant to the RRP Rule and who is experienced in educating tenants on the hazards of lead-based paint and methods of minimizing potential exposures.

   (3)   At least two months before each resident education session, seek and receive EPA approval of the content of the resident education session, including all written materials to be used (such materials to include FAQs and Answers and a URL for Legacy's website), and of the trainer who will lead the educational session.

   (4)   Post notices in locations reasonably designed to inform residents of the educational session at least one month before it takes place. For this purpose, Legacy will seek permission from the building owner or manager to post notices by elevators in lobby and on all floors and, if permission is granted, will do so. Conduct the resident education session in a common space in the building, if available and consented to by the landlord, or in another location convenient to tenants.

(5)     Conduct the resident education session after working hours and provide refreshments and activities suitable for children (*e.g.*, movies, books, and age-appropriate snacks) designed to maximize attendance.

(6)     Distribute EPA's *Protect Your Family From Lead Paint in Your Home* pamphlet to attendees.  Make available copies of the pamphlet in Spanish, Arabic, French, Chinese, Russian, Somali, Tagalog and Vietnamese for attendees who prefer a copy in those language.  (Copies in these languages may be found https://www.epa.gov/lead/protect-your-family-lead-your-home-english.)

(7)     Submit a written report to EPA, no later than 15 days after each resident education session, noting the number of attendees and a summary of the questions asked by the attendees and the answers given.

(8)     For at least one education session, record the session and post a recording of that session on Legacy's website for at least one year, along with a translation of the entire session as requested by tenants.

b.     <u>Worker Training</u>:  Legacy shall offer to the landlord at each of 160 E. 48th Street; 200 E. 62nd Street; 241 Central Park West; 515 E. 89th Street; and 45 White Street to provide a worker training session free of charge for maintenance staff at those buildings on lead-hazard reduction, including the basic elements of and differences between Subparts E and L of EPA's Lead-Based Paint Poisoning Prevention in Certain Residential Structures Rules (40 C.F.R. Part 745),  and common issues pertaining to the use of lead-safe work practices in day-to-day operations.  Legacy will make best efforts to procure the owner of each property's consent to these training sessions.  If the owner of each property consents, for each worker training session, Legacy shall:

(1)     Schedule each training session for a location and time convenient to workers at each building.

(2)     Ensure that each worker training session is conducted by individuals who are EPA-accredited training providers under the EPA's lead-safe certification program.

(3)     Seek and receive EPA approval of the content of the worker training session, including all written materials (including FAQs and Answers) to be used, and of the trainer who will lead the educational session.

(4)     Advise each attendee that the worker training session does not constitute certification as a RRP Certified Renovator or in any

abatement discipline listed in 40 C.F.R. §§ 745.225 and 226, and that the attendee will need to obtain the appropriate certifications to perform certain work covered by the EPA lead-based paint rules.

(5)   Submit a written report to EPA, no later than 15 days after each worker education session, noting the number and names of attendees, the building address where each attendee works, the name of the training provider, and a summary of all questions asked by the attendees and the answers given.

c.   <u>Staffing</u>: For avoidance of doubt, Legacy may use either in-house staff or arrange for outside contractors to arrange for the sessions described in (a) and (b) , provided that such person and sessions comply with the terms of (a) and (b).

d.   <u>Landlord/Property Manager Information Distribution</u>:

(1)   No later than 180 days after the Effective Date, Legacy shall, at each of 160 E. 48th Street; 200 E. 62nd Street; 241 Central Park West; 515 E. 89th Street; and 45 White Street, distribute a fact sheet, approved by EPA, explaining what certifications are required for contractors to perform common building-maintenance and  Renovation work and explaining steps the landlord and/or property managers can take to ensure that their contractors are appropriately certified.

(2)   No later than 180 days after the Effective Date, Legacy shall, at each of 160 E. 48th Street; 200 E. 62nd Street; 241 Central Park West; 515 E. 89th Street; and 45 White Street, distribute a fact sheet, approved by EPA, explaining what requirements are applicable to them when performing or engaging others on their behalf to perform common building-maintenance and  Renovation work and explaining steps the landlord and/or property managers can take to ensure that their employees or contractors are appropriately certified.

e.   <u>Website</u>:   For the duration of the Consent Decree, Legacy will make available on its website, <u>https://legacybd.com</u>, the following: (1) the EPA-approved written materials referenced in Paragraph 30(a)(3); (2) the EPA-approved written materials referenced in Paragraph 30(b)(3); and (3) the fact sheets referenced in Paragraph 30(d).

31.   <u>Mitigation (Certification)</u>:  No later than one year after the Effective Date, Legacy, by a senior officer, shall certify to the United States under penalty of perjury that it has complied with Paragraph 30.

## VII.    REPORTING REQUIREMENTS

32.    <u>Annual Reporting</u>: By January 31st of each year after the Date of Lodging of this Consent Decree, until termination of this Decree pursuant to Section XVIII, the Legacy Parties shall submit electronically by letter an annual report for the preceding calendar year that shall include a list of all Renovations of a Covered Work Site that Legacy or an Additional Legacy Renovation Firm performed in the preceding year.  For each completed Renovation, the report shall include either: (1) a certification that a determination had been made that lead-based paint was not present on the components affected by the Renovation, records to support such a determination, as described in 40 C.F.R. §745.86(b)(1), and a contemporaneously completed Renovation Checklist; or (2) all of the following: (a) records reflecting delivery of the EPA pamphlet titled The Lead-Safe Certified Guide to Renovate Right: Important Lead Hazard Information for Families, Child Care Providers and Schools, as described in 40 C.F.R. §745.86(b)(2)-(5); (b) records demonstrating that the requirements of 40 C.F.R. §745.85 were followed, including the records set forth in 40 C.F.R. §745.86(b)(6); and (c) a contemporaneously completed Renovation Checklist.  To the extent that the Legacy or an Additional Legacy Renovation Firm did not perform any Renovation of a Covered Work Site in the preceding calendar year, the report pursuant to this Paragraph shall so state.

33.    The annual report described in Paragraph 32 shall also include a description of any violation of the requirements of this Consent Decree or the RRP Rule and an explanation of the cause of the violation and of the remedial steps taken, or to be taken, to minimize the effects of such violation and to prevent further violations.

34.    Whenever any violation of this Consent Decree or the RRP Rule or any other event affecting the Legacy Parties' performance under this Consent Decree may pose an immediate

threat to the public health or welfare or the environment, the Legacy Parties shall notify EPA orally or by email as soon as possible, but no later than 24 hours after the Legacy Parties first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraphs.

35.    Each report submitted by the Legacy Parties under this Section shall be signed by Bennardo in his personal capacity, as well as an authorized official (which may be Bennardo) on behalf of Legacy and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

36.    This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

37.    The reporting requirements of this Consent Decree do not relieve the Legacy Parties or any Additional Legacy Renovation Firm of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

38.    Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.   STIPULATED PENALTIES

39.    The Legacy Parties shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).   A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

40.    Late Payment of Civil Penalty.  If Defendant fails to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $1,500 per Day for each Day that any payment is late.

41.    Other Violations.  The following stipulated penalties shall accrue per violation per Day for each violation by a Legacy Party of a requirement set forth in Paragraph 12 or in Sections VI or VII:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

42.    Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

43.    A Legacy Party shall pay any stipulated penalty within 30 Days after receiving the United States' written demand. The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

44.     Stipulated penalties shall continue to accrue as provided in Paragraph 41 during any Dispute Resolution (as set forth in Section X), but need not be paid until the following:

a.      If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, the Legacy Party shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days after the effective date of the agreement or the receipt of EPA's decision or order.

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, the Legacy Party shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days after receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the District Court's decision, the Legacy Party shall pay all accrued penalties determined to be owing, together with interest, within 15 Days after receiving the final appellate court decision.

45.     A Legacy Party shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 17 and with the confirmation notices required by Paragraph 18, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

46.     If a Legacy Party fails to pay stipulated penalties according to the terms of this Consent Decree, the Legacy Party shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for a Legacy Party's failure to pay any stipulated penalties.

47.     The payment of penalties and interest, if any, shall not alter in any way a Legacy Party's obligation to complete the performance of the requirements of this Consent Decree.

48.     Non-Exclusivity of Remedy.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for a Legacy Party's violation of this Decree or applicable

law, including but not limited to an action against a Legacy Party for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## IX.    FORCE MAJEURE

49.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Legacy Parties, of any entity controlled by the Legacy Parties, or of the Legacy Parties' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite the Legacy Parties' best efforts to fulfill the obligation. The requirement that the Legacy Parties exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring, and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include the Legacy Parties' financial inability to perform any obligation under this Consent Decree.

50.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Legacy Parties shall provide notice orally or by email to EPA within 72 hours after when the Legacy Parties first knew that the event might cause a delay. Within seven Days thereafter, the Legacy Parties shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Legacy Parties' rationale for attributing such delay to a force majeure

event if it intends to assert such a claim; and a statement as to whether, in the opinion of the Legacy Parties, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Legacy Parties shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude the Legacy Parties from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. The Legacy Parties shall be deemed to know of any circumstance of which the Legacy Parties, any entity controlled by Defendant, or the Legacy Parties' contractors or sub-contractors knew or should have known.

51.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify the Legacy Parties in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

52.    If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Legacy Parties in writing of its decision.

53.    If Defendant elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, the Legacy Parties shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted

under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 49 and 50. If the Legacy Parties carry this burden, the delay at issue shall be deemed not to be a violation by the Legacy Parties of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.    DISPUTE RESOLUTION

54.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. The Legacy Parties' failure to seek resolution of a dispute under this Section shall preclude the Legacy Parties from raising any such issue as a defense to an action by the United States to enforce any obligation of the Legacy Parties arising under this Decree.

55.    Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when the Legacy Parties send the United States and EPA a written Notice of Dispute. Such Notice of Dispute shall clearly state the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 15 Days after the conclusion of the informal negotiation period, the Legacy Parties invoke formal dispute resolution procedures as set forth below.

56.    Formal Dispute Resolution. The Legacy Parties shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending the United States and EPA a written Statement of Position regarding the matter in dispute. The

Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting the Legacy Parties' position and any supporting documentation relied upon by the Legacy Parties.

57.    The United States will send the Legacy Parties its Statement of Position within 45 Days after receipt of the Legacy Parties' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position is binding on the Legacy Parties, unless the Legacy Parties file a motion for judicial review of the dispute in accordance with the following Paragraph.

58.    <u>Judicial Dispute Resolution</u>.  The Legacy Parties may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute.  The motion (a) must be filed within 10 Days after receipt of the United States' Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 55, unless the Plaintiffs raise a new issue of law or fact in the Statement of Position; (c) shall contain a written statement of the Legacy Parties' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

59.    The United States shall respond to the Legacy Parties' motion within the time period allowed by the Local Rules of this Court.  The Legacy Parties may file a reply memorandum, to the extent permitted by the Local Rules.

60.    Standard of Review

a.    <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 56

pertaining to the adequacy of proposed measures to comply with the RRP Rule or any other items requiring approval by EPA under this Consent Decree, the adequacy of the performance of work undertaken pursuant to this Consent Decree, and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, the Legacy Parties shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.    Other Disputes.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 56, the Legacy Parties shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

61.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the Legacy Parties under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 44.  If the Legacy Parties do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI.    INFORMATION COLLECTION AND RETENTION

62.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any a Covered Work Site at which the Legacy Parties are performing Renovations or where Renovation records are kept, at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Consent Decree;

b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.    obtain samples and, upon request, splits of any samples taken by the Legacy Parties or their representatives, contractors, or consultants;

d.    obtain documentary evidence, including photographs and similar data; and

e.      assess the Legacy Parties' compliance with this Consent Decree.

To the extent that such right of entry to a Covered Work Site requires approval by the owner(s) of the Covered Work Site, the Legacy Parties shall take all reasonable steps to obtain such approval prior to commencement of the Renovation.

63.      Until three years after the termination of this Consent Decree, the Legacy Parties shall retain, and shall instruct its contractors, subcontractors, and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors', subcontractors', or agents' possession or control, or that come into its or its contractors', subcontractors', or agents' possession or control, and that relate in any manner to the Legacy Parties' performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, the Legacy Parties shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

64.      At the conclusion of the information-retention period provided in the preceding Paragraph, the Legacy Parties shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, the Legacy Parties shall deliver any such documents, records, or other information to EPA.  The Legacy Parties may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Legacy Parties assert such a privilege, they shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record,

or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by the Legacy Parties. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

65.    The Legacy Parties may also assert that information required to be provided under this Section is protected as TSCA-specific Confidential Business Information ("CBI") under 15 U.S.C. § 2613 or as CBI under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, the Legacy Parties shall follow the procedures set forth in the applicable statutory or regulatory provisions.

66.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of the Legacy Parties to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

67.    This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action.

68.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 67.

69.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  The Legacy Parties are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and the Legacy Parties' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that the Legacy Parties' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 15 U.S.C. § 2616, *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits.

70.     This Consent Decree does not limit or affect the rights of the Legacy Parties or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against the Legacy Parties, except as otherwise provided by law.

71.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

72.     The Legacy Parties acknowledges that the United States has relied on the financial information provided by Defendant to the United States identified in Exhibit C, in entering into the Consent Decree.  Such representations and financial information are material to the United States' decision to agree to the terms contained herein.  Accordingly, the United States reserves its right to seek additional relief (including payment of additional civil penalty) judicially or administratively with respect to the matters contained in the Complaint if representations or financial information are materially inaccurate or contain material omissions, notwithstanding Paragraph 67.  Any such relief would be in addition to, and not in lieu of, the Legacy Parties'

agreements under this Consent Decree. The Legacy Parties waive any statute of limitations defense that may otherwise apply to such additional relief. The Legacy Parties reserve their defenses to such additional relief except the defense that Paragraph 67 bars such relief and except any statute of limitations defense.

## XIII.  COSTS

73.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by the Legacy Parties, or any action to seek additional relief as set forth in Paragraph 72.

## XIV.   NOTICES

74.    Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing, addressed as follows:

As to the United States by email:    ilan.stein@usdoj.gov
samuel.dolinger@usdoj.gov
eescdcopy.enrd@usdoj.gov
Re: DJ # 90-5-1-1-12249

As to DOJ by mail:    Ilan Stein, AUSA
Samuel Dolinger, AUSA
U.S. Attorney's Office
86 Chambers Street, 3rd Floor
New York, NY 10007

EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-5-1-1-12249

As to EPA by email:          taylor.karen@epa.gov
                             lareau.meghan@epa.gov

As to the Legacy Parties:    Legacy Builders/Developers Corp.
                             Attn: John Bennardo
                             519 8th Avenue, 12th Floor
                             New York, NY 10018

75.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

76.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.    EFFECTIVE DATE

77.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that the Legacy Parties hereby agree that they shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVI.    RETENTION OF JURISDICTION

78.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII.  MODIFICATION

79.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

80.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 60, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

81.    After the Legacy Parties have completed the requirements of Paragraph 30, maintained continuous satisfactory compliance with this Consent Decree for a period of three years, and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, the Legacy Parties may serve upon the United States a Request for Termination, stating that the Legacy Parties have satisfied those requirements, together with all necessary supporting documentation.

82.    Following receipt by the United States of the Legacy Parties' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether the Legacy Parties have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

83.    If the United States does not agree that the Decree may be terminated, the Legacy Parties may invoke Dispute Resolution under Section X.  However, the Legacy Parties shall not

seek Dispute Resolution of any dispute regarding termination until 30 Days after service of its Request for Termination.

## XIX.   PUBLIC PARTICIPATION

84.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  The Legacy Parties consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XX.   SIGNATORIES/SERVICE

85.     Each undersigned representative of the Legacy Parties and the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

86.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  The Legacy Parties agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  The Legacy Parties need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXI.   INTEGRATION

87.    This Consent Decree, including the Exhibits and the deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements, and understandings, whether oral or written, concerning the subject matter of the subject matter of the Decree herein.

## XXII.  26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

88.    For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of Section VI and Paragraphs 13, 32-33, 35, 62-64 is restitution, remediation, or required to come into compliance with law.

## XXIII. FINAL JUDGMENT

89.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and the Legacy Parties.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXIV. EXHIBITS

90.     The following Exhibits are attached to and part of this Consent Decree:

Exhibit A:    Notice of Terms of Consent Decree for Contractors and Subcontractors

Exhibit B:    Checklist for Renovations Regulated by the Lead Renovation, Repair, and Painting (RRP) Rule

Exhibit C:    Ability-to-Pay Documentation

The Clerk of Court is requested to terminate ECF No. 11 and the matter in its entirety.

SO ORDERED.

DATED AND ENTERED:      OCTOBER 7, 2024
                        NEW YORK, NEW YORK

_____

DALE E. HO
UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES OF AMERICA:

Dated:   August 22, 2024                              DAMIAN WILLIAMS
                                                     United States Attorney for the
                                                     Southern District of New York

                                       By:    *Ilan Stein*
                                                     ILAN STEIN
                                                     SAMUEL DOLINGER
                                                     Assistant United States Attorneys
                                                     86 Chambers Street, 3rd Floor
                                                     New York, NY 10007
                                                     Tel.:  (212) 637-2525/2677
                                                     Fax:  (212) 637-2786
                                                     Email:  ilan.stein@usdoj.gov
                                                            samuel.dolinger@usdoj.gov

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:


PAUL SIMON
_____
Digitally signed by PAUL SIMON
Date: 2024.08.22 18:36:14 -04'00'

PAUL SIMON
Regional Counsel, Region 2
U.S. Environmental Protection Agency
290 Broadway
New York, NY 10007


KAREN TAYLOR
Assistant Regional Counsel, Region 2
U.S. Environmental Protection Agency
290 Broadway
New York, NY 10007

FOR LEGACY BUILDERS/DEVELOPERS CORP.:

Dated: _____

JOHN BENNARDO
*President*
*Legacy Builders/Developers Corp.*

Dated: _____

VINCENT VERDIRAMO
Verdiramo & Verdiramo PA
3163 JFK Blvd.
Jersey City, NJ 07306
Tel.: (201) 798-7082
Email: vincent@verdiramolaw.com
*Counsel for Legacy Builders/Developers*
*Corp.*

FOR JOHN BENNARDO:

Dated: _____

JOHN BENNARDO

36

# Exhibit A

## Notice of Terms of Consent Decree
## for Contractors and Subcontractors

# Notice of Terms of Consent Decree

United States of America v. Legacy Builders/Developers Corp.,
No. 24 Civ. 6367 (S.D.N.Y.)

*Legacy Builders/Developers Corp. is currently party to a consent decree that imposes obligations upon Legacy Builders/Developers Corp. and any contractor or subcontractor retained to perform work for the renovation project in which you are serving as a contractor or subcontractor. Pursuant to the consent decree, the work you perform as a contractor or subcontractor to Legacy Builders/Developers Corp. must be performed in conformity with the provisions set forth below. Terms used in this Notice are as defined in the consent decree.*

---

**INJUNCTIVE RELIEF**

1.    <u>RRP Rule Compliance</u>: Defendant shall comply, and the Legacy Parties shall ensure that all Additional Legacy Renovation Firms comply, with the RRP Rule during Renovations at a Covered Work Site, including, but not limited to, by:

    a.    Having firm certification pursuant to 40 C.F.R. §§ 745.81(a)(2)(ii) and 745.89(a)(1);

    b.    Assigning a Certified Renovator pursuant to 40 C.F.R. §§ 745.81(a)(3) and 745.89(d)(2) to all Renovations at a Covered Work Site, and either having Certified Renovators perform all Renovation activities at a Covered Work Site, or having other individuals performing Renovation activities at a Covered Work Site trained by a Certified Renovator as provided in 40 C.F.R. §§ 745.81(a)(3) and 745.89(d)(1);

    c.    Providing the lead hazard information pamphlet ("The Lead-Safe Certified Guide to Renovate Right") to the building, the owner or occupant of the unit being renovated, and/or each affected unit pursuant to 40 C.F.R. § 745.84(a), (b), and (c), obtaining a written acknowledgment of receipt of the pamphlet or obtaining a certificate of mailing at least 7 days prior to the Renovation, and maintaining relevant records for three (3) years after the termination of the Consent Decree;

    d.    Posting warning signs pursuant to 40 C.F.R. § 745.85(a)(1);

    e.    Containing the work area pursuant to 40 C.F.R. § 745.85(a)(2);

    f.    Containing waste from Renovation pursuant to 40 C.F.R. § 745.85(a)(4);

    g.    Performing post-Renovation clean up pursuant to 40 C.F.R. § 745.85(a)(5); and

        h.     Maintaining and producing records pursuant to 40 C.F.R. §§ 745.86(a) and (b).

2.    <u>Renovation Checklist</u>: Defendant shall use, and the Legacy Parties shall ensure that all Additional Legacy Renovation Firms use, the Renovation Checklist attached to this Consent Decree as Exhibit B when performing Renovations of a Covered Work Site.

3.    <u>Personal Protective Equipment</u>: Offer at Legacy's expense personal protective equipment to current employees or contractors, including disposable coveralls, disposable non-latex gloves, disposable foot covers, eye protection, N-100 respirators, disposable waste bags, and duct tape.

4.    <u>Notification of Work</u>: Defendant shall notify, and the Legacy Parties shall ensure that all Additional Legacy Renovation Firms notify, EPA in writing in accordance with Section XIV:

        a.     Of each upcoming Renovation performed for compensation at a Covered Work Site by such entity at least 14 days before beginning the Renovation. The notification to EPA of a Renovation shall include, at a minimum: (a) the location of the Covered Work Site (the address) and the areas to be renovated (e.g., apartment number(s), common area(s), exterior); (b) the character of the Covered Work Site (e.g., single family domicile, multi-family apartment building, school building); (c) whether the Covered Work Site will be occupied at the time of the Renovation; (d) whether children reside at or frequent the Covered Work Site when not under Renovation; (e) the scope of work to be performed; (f) the full name, address, and telephone number of each contractor and/or subcontractor working on the Renovation, (g) the full name, address and telephone number of the individual who will be the on-site Certified Renovator for the work and a copy of his/her Renovator certificate, (h) the name, address, and telephone number of the Covered Work Site's owner or agent; (i) the scheduled dates of work; and (j) any test results supporting an exemption pursuant to 40 C.F.R. § 745.86(b)(1). Additionally, the notification will state that Legacy or the Additional Legacy Renovation Firm authorizes EPA to inspect at the Covered Work Site while the Renovation is occurring and will take all reasonable steps to secure access for EPA from the Covered Work Site's owner(s). If a Renovation-related change/modification (e.g., change of Certified Renovator, scope of work, dates of work) becomes necessary, Legacy or the Additional Legacy

Renovation Firm must either update their original notification to EPA for that Covered Work Site or send EPA a new notification promptly.

b. Of complaints they receive verbally or in writing from tenants, neighbors, the public, tenant organizations, and workers regarding work regulated by the RRP Rule within seven (7) Days after receiving such complaints.

c. Of any official correspondence received from New York City agencies regarding the condition, handling, maintenance, disturbance, containment, or abatement of lead-based paint at the Covered Work Site within seven (7) Days after receiving such correspondence.

5.    Compliance Officer: Legacy shall designate, and the Legacy Parties shall ensure that each Additional Legacy Renovation Firm designates, a compliance officer (individually certified as a Renovator) as a point of contact to deal with lead safe work practice issues, monitor contractors' and subcontractors' compliance with RRP Rule requirements for that Firm, and respond to EPA with regard to any other issues that may arise with regard to the performance of a Renovation (the "Compliance Officer"). Legacy and/or Additional Legacy Renovation Firms may share a Compliance Officer. No Renovation work shall be performed at any Covered Work Site unless a Compliance Officer has been designated and is available to EPA at any time Renovation is taking place.

6.    Contractors and Subcontractors: Legacy shall hire, and the Legacy Parties shall ensure that Additional Legacy Renovation Firms hire, only certified firms as contractors and subcontractors for Renovations at a Covered Work Site; memorialize contractor and subcontractor hiring in written contracts, copies of which shall be available to EPA upon request; and when utilizing contractors and subcontractors, for Renovations at a Covered Work Site:

a. Require the contractors or subcontractors to use the Renovation Checklist. Regardless of the provisions of any contract between the Legacy and/or the Additional Legacy Renovation Firm and their contractors or subcontractors, Legacy and/or the Additional Legacy Renovation Firm is responsible for the completion of the Renovation Checklist by its contractors or subcontractors for each Renovation of a Covered Work Site.

b.    Suspend any contractor or subcontractor with an expired RRP firm certification as soon as possible but not later than twenty-four (24) hours after learning of the expired certification. Legacy and/or the Additional Legacy Renovation Firm shall notify EPA in writing within seven (7) Days after each suspension.

c.    Suspend any contractor or subcontractor found to be in violation of the RRP Rule and cause their work to cease as soon as is feasible, but in no event more than twenty-four (24) hours after receiving credible notice of the violations.

d.    Require contractors and subcontractors to certify in writing, prior to receiving payments beyond an initial deposit, that they have complied with the RRP requirements for the work they have performed or continue to perform and to submit records demonstrating compliance at the completion of the work. The designated Compliance Officer shall review these records to confirm that they demonstrate compliance prior to Legacy and/or the Additional Legacy Renovation Firm making final payment. Legacy and/or the Additional Legacy Renovation Firms shall maintain and make available to EPA any such records for three (3) years after the termination of the Consent Decree.

Nothing in this Paragraph relieves Legacy, the Legacy Parties, or any Additional Legacy Renovation Firm of any legal responsibility it may have under applicable law for RRP violations during any Renovation of a Covered Work Site performed by any contractor or subcontractor.

# Exhibit B

## Checklist for Renovations Regulated by the Lead Renovation, Repair, and Painting (RRP) Rule

# CHECKLIST FOR RENOVATIONS
# REGULATED BY THE RRP RULE

## General Project Information:

Property Address: _____
City       State   Zip

Contractor/subcontractor firm name and certification number (copy of the firm certificate must be on file with the Defendants):

_____
Firm Name               Certification Number

Assigned certified renovator name & certification number (copy of training certificate must be available on the work site and attached to this checklist):

_____
Renovator Name             Certification Number

Brief description of Renovation Project (include painted surfaces disturbed and estimated size):

Did the contractor/subcontractor obtain a written determination from a certified inspector or risk assessor that lead-based paint was not present on the components affected by the renovation?

___ **Yes and a copy of the determination is attached to this checklist. *(Form is COMPLETE. Sign Certification on last page.)***

___ **No** *(Continue to Next Section, "Lead Testing Information")*

## NOTIFICATION CHECKLIST FOR RENOVATIONS
## REGULATED BY THE RRP RULE

### LEAD TESTING INFORMATION:

Were EPA or applicable state recognized lead test kits used by certified renovator on each and every component (for example, each window to be replaced must be tested unless it is assumed to have lead-based paint) to determine whether lead was present on components affected by renovation?

**___ Yes          ___ N/A**

Identify workers and kits used and describe components tested, sampling locations and results below. Follow the lead test kit directions completely when testing components.  Document paint chip sampling using the template on the following page and attach any laboratory results.

| Certified Renovator Name | Certification Number |
|---|---|
|  |  |
|  |  |
|  |  |

*Attach additional sheets as needed.*

| Test Kit Manufacturer and Model | Date of Testing | Component and Location Tested | Result |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

*Attach additional sheets as needed.*

***Note -- Each window to be replaced must be tested unless it is assumed to have lead-based paint***

**For each sample collected, fill out all of the following information:**
Sample Identifier: _____
Sample Collector Name: _____
Sampling Location: _____
Sampling site description: _____ Date of Collection: ____/_____/_____
Sample Dimensions (cm): _____ Calculate Sample Area (cm²):_____
*NLLAP-recognized entity and location: _____
  Submission date: ____/_____/_____ Results: _____ Result Date: ___/_____/_____

Attach additional sheets as necessary.
*National Lead Laboratory Accreditation Program

## NOTIFICATION CHECKLIST FOR RENOVATIONS
## REGULATED BY THE RRP RULE

**General Information**
Name of Property Owner:_____
Address:_____
City:_____ State: _____ Zip code: _____ Contact #: (___) ____- _____
Email: _____

**Renovation Information**
Renovation Address: _____ Unit #: _____
City: _____ State: _____ Zip code: _____
Certified Firm Name: _____
Address: _____
City: _____ State: _____ Zip code: _____ Contact #: (___) ____- _____
Email: _____
Certified Renovator Name: _____
Date Certified _____/ _____/_____

**For each sample collected, fill out all of the following information:**
Sample Identifier: _____
Sample Collector Name: _____
Sampling Location: _____
Sampling site description: _____ Date of Collection: ____/_____/_____
Sample Dimensions (cm): _____Calculate Sample Area (cm²):_____
*NLLAP-recognized entity and location: _____
Submission date: ____/_____/_____ Results: _____ Result Date: ____/_____/_____

Attach additional sheets as necessary.
*National Lead Laboratory Accreditation Program

Was lead-based paint determined to be present on the components affected by the renovation?

___ **Yes** (*Continue to Next Section, "Notification, Work Practices, and Recordkeeping"*).

___ Presumed to be present on the components affected by the renovation (*Continue to Next Section, "Notification, Work Practices, and Recordkeeping"*).

___ **No** *(Form is COMPLETE, sign Certification on last page.)*

# CHECKLIST FOR RENOVATIONS
# REGULATED BY THE RRP RULE

## NOTIFICATION, WORK PRACTICES, AND RECORDKEEPING:

**(40 C.F.R. Parts §§ 745.84-745.86 or applicable state program)**

Please acknowledge one of the following:

☐ Signed and dated acknowledgments of receipt of the Renovate Right pamphlet from, as applicable: owners and, if not owner-occupied, adult occupants of dwelling units, owners of multi-unit housing for renovations in common areas; and owners and adult representatives of child-occupied facilities are attached to this checklist;

**OR**

☐ Certificates of mailing of the Renovate Right pamphlet to the following, as applicable: owners and, if not owner-occupied, adult occupants of dwelling units; owners of multi-unit housing for renovations in common areas; and owners and adult representatives of child-occupied facilities are attached to this checklist.

**OR**

☐ Certificates of attempted delivery of the Renovate Right pamphlet to adult occupants of dwelling units or adult representatives of child-occupied facilities are attached to this checklist.

Comments on pamphlet delivery (*i.e.*, obstacles encountered and how they were addressed):

_____
_____
_____

If the Renovation Project involved a common area of a multi-unit building, was a signed statement describing the steps performed to notify all occupants of multi-unit housing of the renovation activities, to provide the Renovate Right pamphlet to all occupants, and to inform of any changes to the renovation activities, obtained and attached?

___ **Yes**          ___ **N/A**

If the Renovation Project was performed in a child-occupied facility, was a signed statement describing the steps performed to notify all parents and guardians of children using child-occupied facilities of the renovation activities, to provide the Renovate Right pamphlet, and to provide a copy of the records showing compliance with the RRP Rule and any dust clearance sampling reports obtained and attached?

___ **Yes**          ___ **N/A**

Name(s) of dust sampling technician, inspector, or risk assessor, if used (attach copies of their certification to this checklist):

_____
_____
_____

## CHECKLIST FOR RENOVATIONS
## REGULATED BY THE RRP RULE

## NOTIFICATION, WORK PRACTICES, AND RECORDKEEPING:  continued

If applicable, certified renovator provided training to workers on (check all that apply):

☐ Posting warning signs      ☐ Setting up plastic containment barriers

☐ Maintaining containment      ☐ Avoiding spread of dust to adjacent areas

☐ Waste handling      ☐ Post-renovation cleaning


List Names of workers trained (attach a copy of any records documenting which elements were taught to each worker):

_____

_____

_____

_____


Renovator posted signs defining work area to keep others out of renovation work area.  Warning signs were posted at entrance to work area.

___ **Yes**       ___ **N/A**


Work area contained to prevent spread of dust and debris? (Check all that apply)

(INTERIOR)

☐ All objects in the work area were removed or covered (interiors).

☐ HVAC ducts in the work area were closed and covered (interiors).

☐ Windows and doors in the work area were closed and sealed (interiors).

☐ Floor surfaces covered by plastic extending 6 feet from work area (interiors).

☐ Doors in the work area were closed and sealed (interiors).

☐ Doors that must be used in the work area were covered to allow passage but prevent spread of dust (interiors).

☐ Floors in the work area were covered with taped-down plastic (interiors).

(EXTERIOR)

☐ Windows in and within 20 feet of the work area were closed (exteriors).

☐ Doors in and within 20 feet of the work area were closed and sealed (exteriors).

☐ Ground was covered by plastic extending 10 feet from work area - plastic anchored to building and weighed down by heavy objects (exteriors).

☐ If necessary, vertical containment was installed if property line prevents 10 feet of plastic ground cover, or if necessary to prevent migration of dust and debris to adjacent property (exteriors).

# CHECKLIST FOR RENOVATIONS
# REGULATED BY THE RRP RULE

## <u>NOTIFICATION, WORK PRACTICES, AND RECORDKEEPING</u>:  continued

**Please acknowledge the following if applicable:**
None of the prohibited and restricted work practices was employed.

**___ Yes          ___ N/A**

Waste was contained on-site and while being transported off-site.

**___ Yes          ___ N/A**

Work site was properly cleaned after renovation:

**___ Yes          ___ N/A**

☐ All chips and debris were picked up, protective sheeting misted, folded dirty side inward, and taped for removal;

☐ Plastic sheeting misted, folded dirty side inward, and taped for removal; and

☐ Work area surfaces, walls, and objects were cleaned using HEPA vacuum and/or wet-cloths or mops (interiors).

Certified renovator performed post-renovation cleaning verification. Describe results, including the number of wet and dry cloths used:

_____
_____
_____
_____

## OR

If dust clearance testing was performed instead of cleaning verification, the sample results were below clearance standards and a copy of the report was provided to property owners and, if not owner-occupied, adult occupants of residential dwellings or adult representatives of child-occupied facilities and posted in common areas of any multi-unit housing. A copy of the results is attached to this checklist.

**___ Yes          ___ N/A**

If the renovation is an emergency renovation under the RRP Rule, describe the nature of the emergency and document the provisions of the RRP Rule that were not followed:

_____
_____
_____
_____

# CHECKLIST FOR RENOVATIONS
# REGULATED BY THE RRP RULE

## *CONTRACTOR/SUBCONTRACTOR CERTIFICATION*

*I, the undersigned contractor/subcontractor, certify under penalty of law that the above information is true and complete, and do hereby certify that I have complied with all requirements of the Lead Renovation, Repair, and Painting Rule ("RRP Rule"), 40 C.F.R. § 745.80, et seq., and/or any applicable state laws or program regulating lead-based paint safe work practices, including compliance with all information distribution, notice requirements and work practice standards in performing this Renovation Project. I certify that I have provided the occupants (if any) of the Property to be Renovated, with all documentation required to be supplied under the RRP Rule and/or state program, shall retain all records required by law for at least 3 years or longer if required by state law, and shall provide copies to EPA of all the records required to be retained by the RRP Rule or applicable state program upon request. I have provided the Defendants with a completed copy of this Renovation Recordkeeping Checklist and all associated documentation to support its contents.*

_____          _____
**Contractor/subcontractor Name and Title**          **Date**

_____          _____
**Signature of Authorized Officer**          **Date**

_____
**Print Name of Authorized Officer**

_____
**Title**

## **Exhibit C – Ability-to-Pay Documentation**

*In determining Defendant Legacy Builders/Developers Corp.'s ability to pay a civil penalty, the United States of America relied upon the following documentation provided by Defendant:*

- The United States Department of Justice's *Financial Disclosure Statement for Business* executed by Defendant on April 17, 2023.

- Defendant's Form 1120-S U.S. Income Tax Return for an S Corporation for Tax Years 2017, 2018, 2019, 2020, 2021, and 2022.

- Defendant's financial statements from 2017, 2018, 2019, 2020, 2021, and 2022, and interim financial statement as of August 2023.

- Financial statements and/or tax returns for:

    o Current Technologies Inc. from 2020, 2021, 2022, and interim financial statement as of May 2023.

    o Rouben Flooring Solutions Corp. from 2017, 2018, 2019, 2020, 2021, 2022, and interim financial statement as of May 2023.

    o Virtuoso Tile & Stone Corp.  from 2021, 2022, and interim financial statement as of May 2023.

- Financial statements for Legacy Builders/Developers Corp. Southeast from 2021, 2022, and interim financial statement as of May 2023.

- Defendant's American Express statements dated February 10, 2023, through December 10, 2023.

- Bank statements from 2023 for John Bennardo, President/CEO of Legacy Builders/Developers Corp.